UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| GWENDOLYN E. H. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV413-031 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Gwendolyn E. H. Johnson appeals the Social Security Commissioner's denial of her application for disability benefits and Supplemental Security Income (SSI). Doc. 1. An ALJ evaluated her medical evidence and determined that despite a ruptured disk in her neck, high blood pressure, and other problems, she was not disabled. Doc. 14-2 at 18-19.[1] For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software.

## I. BACKGROUND

Johnson was 48 years old on her alleged November 20, 2004 disability onset date. Doc. 14-2 at 13, 18.[2] In 2004 she was treated for a herniated disc, and in September of that year she underwent a "cervical discectomy with C5-6 arthrodesis, decompression and fixation. . . ." Doc. 14-2 at 13. From 2006 to 2007 she was treated for hypertension, foot/knee pain, asthma, diabetes, and arthritis. *Id.* A plantar calcaneal spur showed up on a May 2007 X-ray and Johnson was prescribed medication for it. *Id.* In 2008 and 2009 she was treated "for asthma, a high-grade squamous intraepithileal lesion with cervical dysplasia/neoplasia and a torn right-knee meniscus tear with compartment osteoarthritis (OA)." *Id.* at 13-14. Her lesion and knee were treated in 2008 and 2009. *Id.* at 14. Lung nodules and lower lumbar degenerative changes were discovered in a 2009 CT scan. *Id.* And "severe osteoarthritis with extensive bone marrow odema, moderate effusion, hypetrophy and a small tear" turned up in a February, 2008 MRI scan." *Id.*

---

[2] She is thus defined as a younger individual (age 18–49) on the alleged disability onset date. *See* 20 CFR §§ 404.1563(c) and 416.963(c).

2

These impairments, the ALJ concluded, "caused a significant limitation in [Johnson's] ability to perform basic work activities." Doc. 14-2 at 14. He also found that she "has not engaged in substantial gainful activity since November 20, 2004, the alleged onset date...." *Id.* at 13. Yet, after reviewing the evidence, doc. 14-2 at 14-17, he determined that she could perform (and is limited to) "light work with certain restrictions," *id.* at 17,[3] then ultimately ruled her not disabled. *Id.* at 18-19. Further administrative appeal was denied, doc. 14-2 at 2-4, leading to this judicial review. Doc. 1.

## II. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted). It "is

---

[3] He later gave her "the benefit of the doubt" and thus "found that the claimant is further restricted to light work due to knee and back pain." Doc. 14-2 at 17.

3

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotes omitted); *Lee v. v. Comm'r, Soc. Sec.*, 2014 WL 53040 at * 1 (11th Cir. Jan. 8, 2014). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In that regard, the Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 459 F. App'x 845, 846 n. 1 (11th Cir. 2012) (citing *Dyer*, 395 F.3d at 1210).

The burden of proving disability lies with the claimant. 20 CFR § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether she has met her burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 CFR § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one,

the claimant must prove that she has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. *Id.*

Then, at step three, if the claimant's impairment meets or equals a "Listed Impairment" in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, she qualifies to be found disabled. *Jones*, 190 F.3d at 1228. If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. *Id.* If she has never worked, or cannot perform past relevant work, step five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

## III. ANALYSIS

### A. The ALJ's Determination

Johnson's contentions are best understood by first reviewing the ALJ's five-step analysis. He found that she achieved step one, as she had not engaged in substantial gainful activity since her alleged onset date. Doc. 14-2 at 13. She also met step two: her "impairments

caused significant limitation in [her] ability to perform past work activities." *Id.* at 14.

In assessing, at step three, whether her impairments meet or equal Listed Impairments, he consulted Listings 1.02A (major dysfunction of a weight-bearing joint); 1.04 (spinal disorder) and 14.09 (inflammatory arthritis), and found that "the medical evidence fails to establish that [her] impairments meet or medically equal the criteria of the aforementioned Listings." Doc. 14-2 at 14.

Johnson thus had to prove, under step four, an inability to perform past relevant work. The ALJ extensively reviewed the record medical evidence and found that she has retained a Residual Functional Capacity (RFC) "which indicated that [she] was able to physically function, even with her impairments." Doc. 14-2 at 17. Hence, Johnson "is capable of performing past relevant work as a maid/housekeeper. This work does not require the performance of work-related activities precluded by [her RFC] (20 CFR 404.1565 and 416.965)." *Id.* The ALJ consulted a Vocational Expert (VE), who "reported that a person with claimant's

medical/vocational/educational profile and current [RFC] was capable of performing her past relevant work as a maid. . . ." *Id.*[4]

While that step four finding obviates the need to reach step five (which shifts the burden to the Commissioner to show that there is other work available in significant numbers in the national economy that she is able to perform), the ALJ nevertheless reached it by finding that "there are other jobs in the national economy that she is also able to perform." Doc. 14-2 at 17. He then made the specific additional finding that her aforementioned "additional limitations have little or no effect on the occupational base of unskilled light work," and that is what she is still capable of performing. Hence, she is not disabled. *Id.* at 18.

### B. Johnson's Claims

Johnson contends that the ALJ's opinion is not supported by substantial evidence. Doc. 18. She says that she in fact *does* have, at step three, an impairment that meets Listed Impairment criteria, and that the ALJ "failed to consider all the evidence in this case when he

---

[4] Note that the ALJ had before him Johnson's hearing record testimony -- she had worked for the City of Savannah, Georgia on one of its sanitation trucks -- "throwing the garbage." Doc. 24-2 at 29. Later, she performed other low-skilled jobs -- a fast-food worker and then some motel maid jobs cut short by, she testified, limitations arising from neck surgery. *Id.* at 29-32.

7

concluded that" she failed to meet it. *Id.* at 7. She illuminates Listing 1.02A, which deals with a "major dysfunction of a joint or joints," *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 869 (11th Cir. 2012), and Listing 4.0, which concerns the cardiovascular system, then insists that "[t]aken together, these conditions result in an inability to effectively ambulate." Doc. 18 at 7. She then layers in Listing 14.09 (Inflammatory Arthritis), and insists that the ALJ misinterpreted the evidence because she later endured "osteophytes [that had] impinged on her esophagus" and "nodules [that had] appeared on her thyroid." *Id.* While there might be some doubt about the etiology of the nodules, "the limitations on her ability to reach and then perform fine/gross movements is without dispute." *Id.* Indeed, "[s]he cannot even do her own hair." *Id.*

The ALJ's determination is supported by substantial evidence. Johnson's argument primarily rests on crediting her own testimony which, as is further explained below, the ALJ was entitled to disbelieve. And plenty of people are saddled with combinations of physical problems yet still function at the minimum (unskilled, light

8

work) level. State agency medical consultants support this decision. Doc. 14-3 at 2-5; doc. 14-8 at 2-9; doc. 14-8 at 61-68.

Nor, for that matter, did two consultants find enough medical evidence to support a "disabled" finding at the agency reconsideration level of review. Doc. 14-3 at 2-6. And none of Johnson's medical sources indicated she had an inability to ambulate and perform at the light unskilled work level. For example, in January 2006 she had no complaints. Doc. 14-7 at 43. Her examination then revealed normal extremities, no musculoskeletal abnormalities, a normal spine, and no neurological deficits. *Id.* In May 2008, she was in a good "General State of Health. *Id.* at 59. And in July 2008, Johnson (then seen for asthma issues) again had normal musculoskeletal system and no neurological deficits. *Id.* at 69.

Johnson hinges much on her claimed inability to walk without pain. Doc 18 at 7-9. The record reflects substantial enough evidence to support the ALJ's finding that her pain is exaggerated and that she is able to ambulate effectively. True, her hearing testimony contradicts this, but the law recognizes that it's simply too easy to exaggerate pain and limitations in quest of a monthly entitlement

9

check. So with supporting medical evidence and articulation of his reasons, the ALJ was free to make credibility findings adverse to her.[5] *See* doc. 14-8 at 7 (medical consultant's "partially credible" assessment of Johnson's claim severity of symptoms); *id.* at 68 (second medical consultant noting that plaintiff was "very histrionic during exam" and that pain seemed exaggerated).[6] The ALJ articulated his reasons and

---

[5] "As a general rule, 'credibility determinations are for the ALJ.' *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984). 'After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.' *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992). If the ALJ discredits subjective testimony, he must explicitly and adequately articulate his reasons. *Id.*" *Clyburn v. Comm'r, Soc. Sec. Admin.*, 2014 WL 486249 at * 1 (11th Cir. Feb. 7, 2014).

[6] Note, for that matter, that within her argument that the ALJ should have found that she met Listing 1.02A, she cites ailments but no record medical evidence to support her claim that is unable to effectively ambulate. Doc. 18 at 6-7. In that regard, she

> has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. 20 C.F.R. § 404.1525(a)-(d); *Wilson*, 284 F.3d at 1224. To "medically equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *Wilson*, 284 F.3d at 1224. If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to the criteria of any listed impairment. *Id.* An impairment that meets only some of the criteria of a Listing, no matter how severely, does not qualify. 20 C.F.R. § 416.925(c)(3). The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986). Furthermore, while the ALJ must consider

cited to supporting medical record evidence in rejecting her pain claims. *Wilson*, 284 F.3d at 1225. They included his review of her daily activities -- "she was able to prepare simple meals, clean/do laundry at a pace, shop and attend Church. [And she] did not indicate that her medical condition affected her ability to stand, reach, sit, communicate, see, remember, complete tasks, concentrate and get along with others." Doc. 14-2 at 15.

Johnson's remaining objections (e.g., that the ALJ failed to consider the effect of the combination of impairments, doc. 18 at 10, and should have consulted a VE,[7] *id.* at 11) ride the same track. In

---

the Listings in making its disability determination, "it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination." *Id.*

*Kalishek*, 470 F. App'x at 870. Here the ALJ was free to, and did, consider the surrounding evidence in concluding that Johnson did not meet the Listed Impairments. *See, e.g., Perkins v. Comm'r, Soc. Sec. Admin.*, 2014 WL 223905 at * 1 (11th Cir. Jan. 22, 2014) (substantial evidence supported ALJ's determination that claimant seeking disability insurance benefits and supplemental security income was not "mentally retarded" to the point where he had an impairment equaling a listed impairment, even though he had an IQ score of 69; claimant had prior gainful employment as a skilled cook, had managed others, a vocational expert concluded that his past work was skilled, and claimant had good daily activities including driving). Johnson simply disagrees with the way the evidence was weighed, but that's not the standard; the standard is whether substantial evidence supports the ALJ's finding, and it does.

[7] No VE was required here. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2. (11th Cir. 1990) ("because the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary."). Nor was one

11

fact, the ALJ expressly considered the effect of plaintiff's combined impairments when he noted the fact that her back and knee problems were severe impairments and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." Doc. 14-2 at 14. He then fully evaluated her condition and properly assigned her an RFC that he later used to resolve her ability to work, and in what economic sector. *Id.* at 17-18.

It is not enough to enumerate maladies, re-determine credibility choices, and then insist that all that "simply *must*" add up to disability, which is essentially what Johnson does in her brief. It has

---

required at the otherwise unnecessary step five finding, since the ALJ based his RFC and other capability determinations on exertional impairments, and Johnson points to no evidence negating his determination that her nonexertional impairments did not significantly limit her basic work skills. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (it was appropriate for the ALJ to rely exclusively on grids and no VE to determine that claimant could perform other work than his past work, since ALJ only needed to consult VE if claimant had nonexertional impairment that limited a wide range of work at given level; ALJ had determined that claimant's non-exertional impairments of depressive disorder and pain disorder did not cause more than minimal limitation to his ability to work, and also determined that his exertional impairments not limit wide range of light or sedentary work); *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (reliance on medical-vocational guidelines, without VE testimony, is permitted if ALJ determines that claimant's nonexertional limitations do not significantly affect claimant's RFC).

been her burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months*...." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Her impairments must be so severe that she is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The ALJ was free to conclude that her problems did not impair her for more than 12 months. And so long as there is more than a mere scintilla of evidence to support him, *Dyer*, 395 F.3d at 1210, the Court must uphold what the ALJ is authorized to conclude: that Johnson -- like so many others -- has medical problems but is still able to function within the lower-job-skill and light-work employment tiers. Here, there is enough evidence of that. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (substantial evidence supported ALJ's adverse credibility determination as to claimant's testimony regarding his pain, in denying claimant's Disability/SSI application, including

evidence that his pain descriptions were inconsistent with reports from his treating and examining physicians, indicating that he had full range of motion in his arms and legs and was capable of doing light work, and were also inconsistent with his own testimony concerning his daily activities).

## IV. CONCLUSION

The ALJ's assessment of Johnson's degree of impairment at both steps three and four of the sequential analysis shows that he considered all of her limitations, whether severe or not, and in combination, before he concluded that she was not disabled. Because substantial evidence in the record supports that result, the Commissioner must be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this 18th day of February, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA